**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ALI ALAME** | : | |
| **Petitioner,** | : | **CIVIL ACTION NO. 3:26-1546** |
| **v.** | : | **(JUDGE MANNION)** |
| **CRAIG A. LOWE, *et al.*,** | : | |
| **Respondents.** | : | |

## <u>MEMORANDUM</u>

Pending before the Court is Ali Alame's ("Petitioner") petition for a writ of habeas corpus pursuant to 28 U.S.C. §2241. (**Doc. 1**). For the reasons stated herein, Petitioner's petition will be **GRANTED**.

## I.   BACKGROUND

Petitioner is a native and citizen of Afghanistan. (Doc. 7-2 at 1). On September 19, 2023, a border patrol agent encountered Petitioner in the San Diego, California Border Patrol Sector. *Id.* at 2. The agent determined that Petitioner had unlawfully entered the United States from Mexico, at a time and place other than as designated by the Secretary of the Department of Homeland Security ("DHS"). *Id.* After determining that Petitioner had illegally entered the United States, the agent detained him for further processing and released him by Order of Recognizance ("OR") due to the lack of bed space. *Id.* On October 5, 2023, Petitioner was served with a Notice to Appear

("NTA"). (Doc. 7-3 at 2). The NTA charged Petitioner as removable under Immigration and Nationality Act ("INA") §212(a)(6)(A)(i) and ordered him to appear before an immigration judge on August 30, 2024. *Id.* at 1. Petitioner subsequently filed an I-589 Application for Asylum, Withholding of Removal and Convention Against Torture Protection. (Doc. 7-6). On January 13, 2026, Immigration Judge Sherease Pratt denied all applications for relief, and ordered Petitioner removed to Afghanistan. (Docs. 7-5, 7-6).

On January 20, 2026, Petitioner was returned to the Champlain, New York Port of Entry per the Safe Third Country Agreement governing refugee claims from nationals of third countries. (Doc. 7-4 at 2). However, the Canada Border Services Agency ("CBSA") denied Petitioner's refugee claims, as he did not meet any of the exceptions of the agreement. *Id.* Petitioner was accordingly returned to the United States—he is currently detained at the Pike County Correctional Facility. (Doc. 1, ¶19).

On February 12, 2026, Petitioner filed a timely appeal from Judge Pratt's decision. (Doc. 7-7). Petitioner's appeal remains pending. *See* EOIR Automated Case Information, Alien No. 245-253-819. On June 5, 2026, Petitioner filed the instant petition for writ of habeas corpus. (Doc. 1). On June 18, 2026, Respondents filed their response to the petition. (Doc. 7). On

- 2 -

July 7, 2026, Petitioner filed a traverse to Respondents' response. (Doc. 9). Accordingly, the petition is ripe for disposition.

## II.    LEGAL STANDARD

Under 28 U.S.C. §2241, district courts have the authority to grant writs of habeas corpus where a petitioner is "in custody under or by color of the authority of the United States . . . in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2241(c)(1), (3).

Furthermore, "[i]t is well established that a federal habeas corpus petitioner generally has the burden of proving facts entitling him to a discharge from custody." *Goins v. Brierley*, 464 F.2d 947, 949 (3d Cir. 1972). However, "[w]ith respect to certain factual issues, the burden of proof may be shifted to the state because of specific policy considerations or because the available evidence is likely to be in the hands of the state." *Id.*

## III.    DISCUSSION

### a. Jurisdiction

The Court's authority to hear noncitizen habeas petitions under 28 U.S.C. §2241 is limited is some circumstances by 8 U.S.C. §§1252(g), (b)(9), and (a)(2)(B)(ii).

§1252(g) states that "[e]xcept as provided in this section and notwithstanding any other provisions of law . . . no court shall have

- 3 -

jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. §1252(g). Here, the Court's jurisdiction is not barred by §1252(g) as Petitioner's claim does not challenge the commencement of removal proceedings, the Attorney General's decision to adjudicate, nor the execution of a removal order. *See Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (finding that §1252(g)(2) divests the court of jurisdiction "only to [these] three discrete actions").

§1252(b)(9) states that "[j]udicial review of all questions of law and fact . . . arising from any action taken or proceedings brought to remove an alien from the United States . . . shall be available only on judicial review of a final order [of removal]." 8 U.S.C. §1252(b)(9). Here, the Court's jurisdiction is not barred by §1252(b)(9) as Petitioner does not seek review of any law or fact arising from a removal proceeding. *See E.O.H.C. v. Sec'y United States Dept. of Homeland Sec.*, 950 F.3d 177, 186 (3d Cir. 2020) (finding that §1252(b)(9) "does not reach claims that are independent of, or wholly collateral to, the removal process[.]").

§1252(a)(2)(B)(ii) prohibits district courts from reviewing discretionary detention choices of the Attorney General or Secretary of Homeland

Security. 8 U.S.C. §1252(a)(2)(B)(ii). Here, the Court's jurisdiction is not barred by §1252(a)(2)(B)(ii) as Petitioner does not challenge a discretionary detention choice. *See Patel v. O'Neil*, 2025 WL 3516865, at *3 (M.D.Pa. Dec. 8, 2025) ("section 1252(a)(2)(B)(ii) is inapposite because the Respondents' 'statutory detention power is "not a matter of discretion" to which §1252(a)(2)(B)(ii) applies[.]'") (internal citations omitted).

Finally, courts considering the issue of whether a petitioner is being wrongfully detained without a bond hearing "have almost universally held that they have jurisdiction," and, therefore, that §§1252(g), (b)(9), and (a)(2)(B)(ii) do not apply. *Patel*, 2025 WL 3516865 at *3.

### b. Exhaustion of administrative remedies

"A petitioner challenging agency action must generally first exhaust administrative remedies; however, in habeas proceedings, 'exhaustion exists as a judicially created doctrine applied at the Court's discretion.'" *Vadel v. Lowe*, 2025 WL 3772059, at *3 (M.D.Pa. Dec. 31, 2025) (quoting *Kashranov v. Jamison*, 2025 WL 3188399, at *3 (E.D.Pa. Nov. 14, 2025)). Here, further administrative review would be pointless, as Petitioner is detained under 8 U.S.C. §1225(b)(2)(A), which precludes immigration judges from holding a bond hearing. *See id.*; *see also Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025) (holding that an immigration judge "has no

- 5 -

authority to consider bond requests for any person who entered the United States without admission[.]").

### c. 8 U.S.C. §1226(a) applies to Petitioner

Respondents argue that Petitioner is subject to mandatory detention pursuant to 8 U.S.C. §1225(b)(2)(A), which does not allow for courts to hold a bond hearing. Petitioner, on the other hand, argues that his detention under §1225(b)(2)(A) violates his procedural due process rights, and that he is subject to discretionary detention under 8 U.S.C. §1226(a), which would entitle him to a bond hearing.

Courts nationwide, including this Court, have been dealing with the very issue presented in this case. Namely, whether a noncitizen habeas petitioner who has been residing in the United States for some time is subject to the mandatory detention provision of §1225(b)(2)(A). In *Barbosa da Cunha v. Freden*, the United States Court of Appeals for the Second Circuit considered the issue and ruled that it is "clear that Section 1226(a) governs detention of noncitizens like Petitioner. Section 1225(b)(2)(A) does not apply to such noncitizens, who are present in the United States after entering the country without inspection and admission, and who were not apprehended while entering the country or shortly thereafter." 175 F.4th 61, 69 (2d Cir. 2026). In reaching this conclusion, the court noted that its "holding is

- 6 -

consistent with the decisions of over 370 district judges across the Nation who (as of mid-February 2026) have also rejected the government's position. In other words, over ninety percent of district judges have sided with Petitioner." *Id.* at 71.

Since *Barbosa da Cunha*, the Sixth and Eleventh Circuits have joined the Second Circuit in ruling that §1226(a) applies. *Lopez-Campos v. Raycraft*, 175 F.4th 713 (6th Cir. 2026); *Hernandez Alvarez v. Warden, Federal Detention Ctr. Miami*, 175 F.4th 1258 (11th Cir. 2026). Additionally, the Seventh Circuit has held that a petitioner is likely to succeed on the merits of a claim for wrongful detention under 8 U.S.C. §1225(b)(2)(A), however, the court did not issue a precedential ruling on the issue. *See Castañon-Nova v. United States Dep't of Homeland Sec.*, 161 F.4th 1048 (7th Cir. 2025) ("*Castañon-Nova I*"); *see also Castañon-Nova v. United States Dep't of Homeland Sec.*, 175 F.4th 828 (7th Cir. May 5, 2026) ("*Castañon-Nova II*"). Still, the *Castañon-Nova* Court's contemplation of the issue further supports the consensus interpretation. The undersigned has also consistently joined in this consensus interpretation and will continue to do so. Indeed, the Government notes that it "recognizes that this Court and other jurists of this District have rejected Respondent's arguments . . . regarding 8 U.S.C. § 1225(b)." (Doc. 7 at 2).

-7-

For §1225(b)(2)(A) to apply: "(1) there must be an 'examining immigration officer' who determines; (2) that an 'applicant for admission'; (3) is 'seeking admission'; and (4) 'not clearly and beyond a doubt entitled to be admitted.'" *Bethancourt v. Soto*, 807 F.Supp.3d 397, 406 (D.N.J. Oct. 22, 2025) (citing 8 U.S.C. §1225(b)(2)(A)).

The consensus view of the courts is that "seeking admission" requires "active and ongoing conduct, such as physically attempting to come into the United States at a border or port of entry." *Gonzalez Centeno v. Lowe*, 2026 WL 94642, at *3 (M.D.Pa. Jan. 13, 2026) (quoting *Quispe v. Rose*, 819 F.Supp.3d 362, 370 (M.D.Pa. 2025)); *see also Barbosa da Cunha*, 175 F.4th at 77 ("When the statute says, 'alien seeking admission,' it therefore refers to a noncitizen who is seeking admission *right now*, not one who sought admission in the past but no longer is") (emphasis in original). An individual affirmatively "seeking admission" should not be confused as being the same as an "applicant for admission." *See Patel*, 2025 WL 3516865 at *5 (finding that such an interpretation of "seeking admission" violates the rule against surplusage). Therefore, because "seeking admission" applies to individuals in an affirmative act, §1225(b)(2)(A) does not apply to "noncitizens . . . who have resided in the United States for years." *Id.* Furthermore, while the "entry fiction" doctrine:

- 8 -

> [A]llows the government to treat physical entrants as if still "on the threshold' if they are 'detained shortly after lawful entry" . . . no one could seriously contend that it applies to a noncitizen like [the petitioner] who has been living in the United States for [an extended period of time]. Under settled Supreme Court precedent, "aliens who have once passed through our gates, *even illegally*, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law."

*Barbosa da Cunha*, 175 F.4th at 86 (emphasis in original).

As for §1226(a), it allows for the Attorney General to arrest and detain a noncitizen "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. §1226(a). Pending that decision, the Attorney General "(1) may continue to detain the arrested alien;" and (2) "may release the alien on . . . bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or . . . conditional parole." 8 U.S.C. §1226(a)(1)-(2). Where an alien is detained under §1226(a), they are still entitled to a bond hearing where they can argue why they should be released from detention pending a final order of removal. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 527 (2021); *see also Borbot v. Warden Hudson County Correctional Facility*, 906 F.3d 274, 277-80 (3d Cir. 2018) (holding that individuals detained under §1226(a) are entitled to a bond

- 9 -

hearing but not entitled to a second bond hearing after their first has been denied).

Here, Petitioner has been living in the United States since September of 2023. (Doc. 7-2). He was not taken into immigration custody until January of 2026. (Doc. 7-4). Therefore, he is not "seeking admission" as defined by §1225(b)(2)(A). Accordingly, 8 U.S.C. §1226(a) applies.

### d. Petitioner's detention under 8 U.S.C. §1225(b)(2)(A) violates due process and warrants release

The Fifth Amendment protects against deprivation "of life, liberty, or property without due process of law. U.S. CONST. amend. V. This protection "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

To determine whether a habeas petitioner's detention under §1225(b)(2)(A) violates due process, courts weigh three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal

- 10 -

and administrative burdens that the additional or substitute procedural requirements would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Application of the factors reveals a clear violation of due process. First, the "most elemental of liberty interest[s]—the interest in being free from physical detention"—is implicated. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Second, Petitioner's erroneous detention under §1225(b)(2)(A) comes with a lack of procedural safeguards, including the opportunity for a bond hearing, which makes it extraordinarily difficult to challenge his detention. *Cunin v. McShane*, 2025 WL 3542999, at *2 (M.D.Pa. Dec. 10, 2025) ("There is a certainty—not merely a risk—that the failure to grant [petitioner] a bond hearing would unlawfully deprive him of the opportunity to make the case for his release and incarcerate him indefinitely"). Third, while the Government has an interest in detaining noncitizens "to ensure [their] appearance . . . at future immigration proceedings and to prevent danger to the community," there is no such need here. *Quispe*, 819 F.Supp.3d at 373 (citing *Zadvydas*, 533 U.S. at 690).

Upon Petitioner's initial entry, the border patrol agent noted that he "did not appear to be a threat to national security, or public safety[.]" (Doc. 7-2 at 2-3). Additionally, Petitioner has no criminal history whatsoever. (Doc. 7-4 at 3). Therefore, Petitioner has no criminal record which would indicate he is a

flight risk or a danger to the community. Petitioner also has a pending immigration appeal, and prior to his detention, he maintained lawful employment with Amazon, Uber, and Lyft. (Doc. 1, ¶¶34, 43). The Court finds that Petitioner has strong incentives to remain accessible and continue attending future hearings. Thus, upon weighing the *Mathews* factors, the Court finds that Petitioner's continued detention under §1225(b)(2)(A) violates his procedural due process rights.

### e. EAJA fees and costs

Petitioner will be permitted to file a motion for costs and fees pursuant to the Equal Access to Justice Act ("EAJA") within thirty days of the entry of this judgment. *See Michelin v. Warden Moshannon Valley Correctional Center*, --F.4th--, 2026 WL 263483 (3d Cir. Feb. 2, 2026) (holding that a petition for a writ of habeas corpus from immigration detention under §2241 is an EAJA "civil action," entitling petitioners to attorneys' fees and costs if the Government's position was not "substantially justified[.]").

### IV.   CONCLUSION

For the foregoing reasons, Petitioner's petition for a writ of habeas corpus under 28 U.S.C. §2241 will be **GRANTED**. Respondents will be ordered to immediately release Petitioner and will be permanently enjoined from re-detaining him under 8 U.S.C. §1225(b). Respondents will also be

temporarily enjoined from re-arresting Petitioner for a period of 14 days to ensure that this habeas remedy is effective. If Respondents later detain Petitioner under 8 U.S.C. §1226, they will be required to provide him with notice and, within 10 days, a bond hearing before an immigration judge, who shall provide an individualized assessment as to whether he poses a flight risk or a danger to the community. If Petitioner is re-detained under §1226 and Respondents fail to schedule a timely bond hearing, he will be permitted to reopen this matter.

Finally, Respondents will be directed to file a declaration or affidavit pursuant to 28 U.S.C. §1746 confirming that Petitioner has been released from custody. An appropriate order shall be issued.

**MALACHY E. MANNION**
**United States District Judge**

DATE: 7/14/26
26-1546-01

- 13 -